[No. 7749.]

HORN V. THE CLARK HARDWARE COMPANY ET AL.

1. MECHANIC'S LIEN—*Applies to a Leasehold in Land*—One furnishing material for the improvement of real property by contract with one having a mere leasehold, is, under the statute (Rev. Stat., Sec. 4027) entitled to a lien upon such leasehold estate.

2. ——*Right of Tenant to Remove Fixtures*—An agreement between the landlord and tenant that the latter may remove the structures which he erects, or the improvements which he places upon the demised premises, has no effect to change the character of such structures, as against third persons.

The tenant had purchased from the lien claimant a boiler, engine, and other machinery and appliances, and erected the same in a building situated upon the leasehold. His intention was that the whole should constitute, and be operated as, a mill for the treatment and reduction of ore. The machinery and appliances were necessary to accomplish this purpose. *Held,* that they thereby became part of the leasehold and were not, as against the lien claimant, liable to be sold as personalty on execution against the tenant.

3.    ——Decree—In Part for Things Not Lienable—A decree award-
ing a lien, in part for things not the subject of a lien under the statute,
fails only to the extent of those matters as to which the allowance is
improper.

4.    ——Parties—Where the lien is asserted only against the lease-
hold interest of the tenant, his landlord is not, under sec. 4035, Rev.
Stat., a necessary party.

*Error to Gilpin District Court.*—Hon. Chas. McCall,
Judge.

Messrs. Gillette & Clark, for plaintiff in error.

Mr. James M. Seright and Mr. Wm. C. Fullerton,
for defendants in error.

Mr. Justice Gabbert delivered the opinion of the court:

The Pewabic Consolidated Mines Company owned a
stone structure known as the "old freight depot," located on
mill-site No. 39, adjoining Blackhawk, in Gilpin county. It
was without a floor, ceiling, roof, partitions, doors or win-
dows. This building and the ground upon which it was lo-
cated, was leased to the plaintiff in error for the period of ten
years. By this lease Mr. Horn was granted (quoting from the
lease) "the privilege of fitting up the said old freight depot
with any and all machinery necessary for the concentration of
tailings from North Clear Creek, and for working any and
all ores by the methods usually adopted by plants for the re-
duction of the precious metals; and further granting unto the
said party of the second part the privilege of diverting and
using all the water from North Clear Creek necessary to
operate said machinery; and further granting unto the said
party of the second part the right, upon the surrender,
termination, or forfeiture of this lease, to remove all machin-
ery, furniture, and fixtures placed upon said premises by the
said party of the second part."

This lease, with the consent of the lessor, was assigned
to The Denver Mining & Reduction Company, which we shall
refer to in the course of the opinion as the lessee. The latter

fitted up the structure so as to afford proper shelter and housing for the machinery of a mud-mill, by putting on a roof and equipping it with doors and windows. The company then installed in the building the necessary tables and other machinery and equipment for a mud-mill. After the mill had been in operation for a time, the mine upon which it depended for tailings shut down, and the mill was idle for several months. A little later the company decided to convert it into a custom mill by the addition of such other machinery as might be necessary. Of the new machinery required to make this change, a portion was supplied by The Denver Mining & Reduction Company, purchased in Denver, and a portion by the defendants in error, Stroehle & Sons. The machinery was placed in position by the latter, the reduction company furnishing a part of the labor. The engine with which the mud-mill had been equipped was taken out, and a new one furnished by the company placed in the building on a concrete foundation sunk in the ground. A new boiler furnished by Stroehle & Sons was placed in the building, set in its own four walls of brick, open in front. In addition to the boiler, Stroehle & Sons furnished other material and equipment in the way of lumber, screens, jigs, shafting, belting, and other fittings used in constructing the mill. The company also owned or furnished, as part equipment of the mill, a number of appliances used in operating it, and also a number of appliances necessary to use in connection with operating the machinery, and a lot of lubricating oil, also used for this purpose. The only portion of the machinery that came in contact with the building was the shafting. It was laid upon stringers, or girders, and extended across the building. The shafting ran in boxes, or journals, bolted to the stringers. The power generated in the building was communicated to this shafting, which, in turn, by belts and pulleys operated the machinery. There is testimony to the effect that all the machinery could be removed without materially injuring the building.

In fitting up the mill, the company purchased material from the defendant in error, The Clark Hardware Company, consisting of tools, brasses, nails, and other materials which were used in the construction and operation of the mill. In July, 1911, the plaintiff in error recovered a personal judgment against The Denver Mining & Reduction Company. A few days later the sheriff of Gilpin county, under an execution issued on this judgment, levied upon and took into his possession, as the personal property of the judgment debtor, the tables, engines and other equipment of the mill, which was a part and parcel of it, as installed in the building; and also some tools and supplies, and advertised the same for sale as personal property. Prior to the date fixed for the sale of this property under execution, the defendants in error, joining as plaintiffs, brought suit against The Denver Mining & Reduction Company, the plaintiff in error, and the sheriff of Gilpin county, the purpose of which was to foreclose a mechanic's lien upon the mill, including the structure and the machinery and equipment therein, which embraces the property levied upon by the sheriff under the execution issued on the plaintiff in error's judgment, and to restrain the latter and the sheriff from selling this property under the execution by virtue of which it had been levied upon. A temporary injunction was issued, restraining the execution sale. The trial of the case resulted in a judgment, making the temporary injunction perpetual, and adjudging the plaintiffs entitled to liens upon the property levied upon by the sheriff, the building in which it was situated, the land upon which the building stands, and decreed that all this property should be sold in satisfaction of the liens so established. To review this judgment, Horn, the judgment creditor, has brought the case here on error.

The first point urged by counsel for plaintiff in error to consider, is, that under the present statute of Colorado a lien will not lie against a leasehold interest in real estate. Section 4027, R. S. 1908, provides, *inter alia*, that "Any lien provided

for by this act  *  *  *  shall extend to any assignable, transferable or conveyable interest of such owner, or reputed owner, in the land upon which such building, structure, or other improvement shall be erected or placed." The act of 1889, Session Laws of that year, 247, provided that "except when otherwise indicated, any person having an assignable, transferable, or conveyable interest or claim in or to any land, building, structure, or other property mentioned in this act, shall be deemed an owner."

This provision was considered in the case of *Carey Hardware Co. v. McCarty,* 10 Colo. App. 200, where it was held that by virtue thereof, a mechanic's lien attached to a leasehold interest in real estate. The purpose of the provisions of the act of 1889 and our present act, was and is the same, namely, to give to those entitled to a lien the right to subject the owner's interest in real estate to such lien. The lien which attaches is not limited to an estate in fee, but extends to any interest of the person that is transferable, assignable, or conveyable in the real estate at whose instance and upon which a building, structure, or improvement is erected. For the purposes of the act, such person is deemed the owner. If he owns the fee, the lien is upon the fee. If he owns a lease estate, the lien attaches to that interest.—*Ombony v. Jones,* 19 N. Y. 234; *Badger Lumber Co. v. Malone,* 54 Pac. (Kan.) 692; *Hathaway v. Davis,* 32 Kan. 693; *Williams v. Vanderbilt,* 145 Ill. 238.

That it was not the purpose of the act of 1899 to limit the right to a lien to an estate in fee, is manifest from the fact that it expressly provides a lien shall attach to whatever interest the person has in the land at whose instance the building, or structure, or other improvement was erected or placed thereon, for which the lien is claimed; and further provides that "Any lien provided for by this act shall extend to and embrace any additional or greater interest in any of such property acquired by such owner at any time subsequent to the

making of the contract, or the commencement of the work upon such structure, and before the establishment of such lien by process of law." Sec. 4027, supra. Clearly, these provisions were wholly unnecessary if, as contended by counsel for plaintiff in error, a lien could only be asserted against an estate in fee. The evident purpose of these provisions is that a mechanic's lien shall operate upon the estate, whatever it may be, which the person employing labor and procuring materials for the construction of an improvement has in the land upon which such improvement is placed before the lien is established by a decree of court. We think the lease-hold interest of The Denver Mining & Reduction Company could be subjected to a lien under our present lien act. To hold otherwise, would be directly contrary to the terms of this act.

The next proposition urged on behalf of plaintiff in error is, that the plant of machinery in the mill was trade fixtures, and therefore, personal property against which a mechanic's lien would not lie, and hence, subject to be levied upon under the execution issued on the judgment obtained by plaintiff in error. In support of this proposition, it is contended that The Denver Mining & Reduction Company was merely a tenant, and had the right to remove the machinery on the expiration or forfeiture of its lease. This question is not really material in determining whether or not the lien claimed by the plaintiffs attached to the machinery. In other words, what the rights of the lessee may be, with respect to removing the machinery, as against the lessor, is of no particular moment in ascertaining the rights of the lien claimants. The lessor and lessee might agree between themselves that the machinery could be removed by the latter when the lease expired, or was forfeited, or by reason of the relation between them, it might be that, independent of any agreement, the machinery could be removed by the lessee on the happening of either of these events, and that, as between them, the machinery, in determining their rights, would not be regarded as a fixture or part of the realty, but their private agreement, or their respective

rights in the machinery by operation of law, would not change the character of this property, so far as the rights of third persons were concerned, who claimed a lien thereon, as realty.— *Mollie Gibson C. M. & M. Co. v. McNichols,* 51 Colo. 54; *Dobschuetz v. Holliday,* 82 Ill. 371; *Hathaway v. Davis, supra.*

The vital question, then, is whether or not, as between the lien claimants and the lessee, the machinery in the building was a part of the lease-hold interest of the latter. In determining this question the test is whether the lessee placed the machinery in the building and attached it either to that structure, or the ground therein, in whole or in part, with the intention that it should become a part of a plant intended, as a whole, to constitute a mill or reduction works, the purpose of which was to extract the values from tailings and crude ores. If that was the object, and its use was necessary or essential for the successful operation of the mill for the purposes designed, then the machinery so placed became a part of the lease-hold interest of the lessee.—*Mollie Gibson C. M. & M. Co. v. McNichols, supra; Carey Hardware Co. v. McCarty, supra.*

That such was the purpose of the lessee, that the machinery was necessary and essential to accomplish the object for which it was installed, and that each article was a component part of the whole, the evidence establishes beyond question. The engine and boiler were attached to the ground within the building. The motive power generated by these fixtures was communicated to shafting attached to the building, which, in turn, operated other machinery therein. All these appliances were reasonably necessary and essential to effect the purpose for which they were placed in the building, and were, therefore, a part of the lease-hold interest of the lessee. Had The Denver Mining & Machinery Company been the owner of the fee of mill-site No. 39, and as such owner, had placed the machinery in the building in the same manner and for the same purpose it did, as lessee, it would hardly be contended that

such machinery could be levied upon under execution as personal property, either as affecting its rights or the rights of others having a prior lien upon the building in which it was placed. In such circumstances the machinery would admittedly be a fixture. In the case at bar the situation and rights of the parties are no different from what they would be in the supposed case, for the obvious reason that the question of whether the machinery was or was not a fixture must be determined by the same rule in each case. We have determined that a lease-hold estate may be the subject of a lien, and logically, it must follow that whatever is a fixture of that estate canbe subjected to the same lien. That such is the purpose of the act is made clear by a consideration of another portion of section 4027, *supra*, whereby it is provided: "The liens granted by this act shall extend to and cover so much of the land whereon such building, structure, or improvement shall be made as shall be necessary for the convenient use and occupation of such building, structure, or improvement, * * * and shall attach to all machinery and other fixtures used in connection with any such lands, buildings, mills, structures, or improvements." Suppose the lessee should sell its lease-hold interest without any reservation; the machinery with which the mill is equipped would pass to the purchaser without being specially mentioned, or if it should sell the mill with a clause conveying its appurtenances and fixtures, such machinery would have been conveyed to the vendee; or suppose The Denver Mining & Reduction Company had seen fit to raise the question that its mill could not be dismantled by the execution creditor levying upon and removing the machinery therein as personal property, for the reason that such machinery was a part of its estate in the premises, would it not be held, without question, that it was not personal property? Counsel for plaintiff in error cite cases which, seemingly, sustain his contention; but an examination of these cases discloses that they are distinguishable from the one at bar, either because of the facts or for the reason that the lien acts are different from ours.

Counsel concedes that if the machinery had been made a part of the realty, and our statute provided for a lien against a lease-hold interest, it might, as a part of the realty, be included in a general lien against such realty. We think our statute, as a whole, beyond question, does provide for a lien against a lease-hold interest, and in determining to what such lien attaches, the rule is no different from what it would be if the lien was asserted against an estate in fee.

It is also contended the evidence discloses that some of the articles for which liens were claimed and allowed were not lienable, and that, therefore, the liens must fall. This is not tenable. To the extent that articles not lienable, if any, were furnished the lessee, liens should not have been allowed; but this would not defeat the entire liens of the respective claimants, as in such circumstances they would be entitled to a decree awarding them liens for the value of such articles furnished by them as were lienable. If liens were allowed for the value of articles not lienable, the judgment (if the record justified it) might be modified; but no error is assigned which raises this question, and hence it is not presented for consideration.

The final question urged is, that the liens must fail because the owner of the property—that is, The Pewabic Consolidated Gold Mines Company—was not made a party. This contention is based upon section 4035, R. S. 1908, which provides that "The owner or owners of the property to which such lien shall have attached, and all other parties claiming of record any right, title, interest or equity therein, whose title or interests are to be charged with or affected by such lien, shall be made parties to the action." The owner meant by this section is the person upon whose interest in the property the lien is claimed, and sought to be established. No claim was made by claimants as against the interest of The Pewabic Company. The liens asserted and sought to be established by claimants were limited to the interest of the lessee, and it was,

therefore, the owner of the property, as contemplated by the section of the statute above quoted.

The judgment of the district court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL, concur.