## HOLLINGSWORTH et al. v. WHITE et al.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1923.)

No. 6099.

Mines and minerals ⬤⇒117—Sale of oil and gas lease in foreclosure of liens held to extinguish all rights thereunder.

Under Gen. St. Kan. 1915, § 4996, providing that any person furnishing labor, material, or supplies used in making or operating any oil or gas well, under contract with the owner of a leasehold, shall have a lien upon the wells, property, and leasehold therefor, the interest of an assignor of a lease, who reserved a share of the net profits from operation thereunder, *held* extinguished by a sale of the lease in proceedings for foreclosure of such liens.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by J. H. White and others against S. R. McCorkle and others. A. E. Hollingsworth and others appeal from a decree for sale of property. Affirmed.

R. L. Read, of Des Moines, Iowa (J. G. Gamble and Sargent, Gamble & Read, all of Des Moines, Iowa, on the brief), for appellants.

Joseph G. Carey, of Wichita, Kan. (R. R. Vermilion, Earle W. Evans, and W. F. Lilleston, all of Wichita, Kan., on the brief), for appellees.

Before KENYON, Circuit Judge, and SYMES, District Judge.

KENYON, Circuit Judge. The questions at issue in this appeal arise out of an oil and gas lease of certain land in Kansas, made June 24,

1919, by Mary H. Bothwell and Ulu Bothwell to D. W. Clawson. Clawson assigned the lease to A. P. Campbell. Campbell assigned the same to S. R. McCorkle and J. H. White, reserving a one-eighth interest of the net profits derived from its operation. September 18, 1919, Campbell assigned to A. E. Hollingsworth and G. B. Hippee, appellants, a one-half interest in this reservation. White & McCorkle assigned an undivided seven-sixteenths interest in the lease to the Red Star Oil Company, retaining the balance. Subsequently White & McCorkle became insolvent, and an action was brought in the United States District Court for the District of Kansas by J. H. White as complainant against S. R. McCorkle et al., asking for the appointment of a receiver, and that the affairs of the partnership be wound up. The Red Star Oil Company having become insolvent the receivership was extended over the interest in the Bothwell lease held by it. The court in its final decree ordered the sale of the Bothwell lease free from the one-eighth working interest of Campbell, Hollingsworth, and Hippee, and the transfer of their interest to the funds derived from the sale of the lease. The interest of Campbell, Hollingsworth, and Hippee being identical, we will refer in this opinion to it as the Campbell interest.

Two questions are presented: (1) Under the assignment of Campbell to White & McCorkle and the reservation of one-eighth of all the net profits derived from the operation of said lease, could the court order a sale that would cut off the right of Campbell and his assignees to one-eighth of the net profits in the future operation of the lease? (2) Could the Campbell interest be cut off by the foreclosure of valid mechanics' liens?

Counsel in their very able and ingenious discussion of the first point present their theory as follows:

"It is our contention that the reservation of this one-eighth interest in the net profits derived from the operation of the lease is a reservation running with the lease, and a burden upon any one who might operate under the lease by virtue of a chain of title to the lease derived through White & McCorkle, and therefore necessarily through Campbell himself." Appellants' Brief, p. 11.

\* \* \* \* \* \* \* \* \* \*

"His reservation of interest amounted in brief, to a contract with any one and every one who should ever operate under the Bothwell lease, to pay him a part of the net profits if there ever should be net profits. He had nothing more than this, and certainly it would seem that he ought to be given nothing else." Appellants' Brief, p. 15.

In view of our conclusion on the other feature of the case, it is unnecessary to determine this question. We are satisfied that the Campbell interest would be terminated by a foreclosure of mechanics' liens under section 4996, General Statutes of Kansas.

The court found that the claims of parties entitling them to mechanics' liens had been established against those operating the premises for oil and gas. Section 4996, hereinbefore referred to, provides as follows:

"*Lien of Contractor on Gas and Oil Leasehold or Pipe-Line for Labor and Material.* Sec. 28. Any person, corporation or copartnership who shall under contract, express or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipe-line or oil pipe-line, or with the trustee

or agent of such owner, who shall perform labor or furnish material, machinery and oil-well supplies used in the digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well, or who shall furnish any oil-well supplies or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing or repairing of any gas well, shall have a lien upon the whole of such leasehold or oil pipe-line or gas pipe-line, or lease for oil and gas purposes, the building and appurtenances, and upon the material and supplies so furnished, and upon said oil and gas well for which they were furnished, and upon all the other oil wells, fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished and labor performed. Such lien shall be preferred to all other liens or incumbrances which may attach to or upon said leasehold for gas and oil purposes and upon any oil pipe-line or gas pipe-line, or such oil and gas wells and the material and machinery so furnished and the leasehold for oil and gas purposes and the fixtures and appliances thereon subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies. Laws 1909, c. 159, § 1; March 31."

The assignment of the lease from Campbell to White & McCorkle was on record and, of course, gave the notice which such record imparts. Counsel for appellants contend in their argument that the Campbell interest is not an interest in the lease, but a mere interest in the net profits. Parties furnishing material would know there could be no profits to the Campbell interests unless the property was developed. To develop the property it must be operated. To operate it there must be material and labor. A party furnishing material and put upon notice by what the record would disclose, if he had pursued the inquiry far enough, would have discovered that in the original assignment White & McCorkle and their assignees were held to pay Campbell and his assignees $20,000 out of one-half of the first oil produced from said property and from one-half of the oil which assignee would be entitled to under said lease and by virtue of the assignment, and that said sum was made a lien upon the interest conveyed until it should be paid. He would have found that as to the reservation of a one-eighth of net profits derived from the operation of said lease no such lien was provided for; that it was not a covenant running with the land, but a collateral matter. He would have no notice of anything that would prevent him enforcing his claim for material or labor furnished to develop the leasehold. It was as much to Campbell's interest as to White & McCorkle's, their assignees, that the property be worked and profits made. Whether White & McCorkle, or their assignees, were joint operators with Campbell and his assignees, or were partners or agents, or whatever they might be called, the fact is that the Campbell interests were acquiescing in the operation and developing of the properties. These interests, with full knowledge of such development and operation, and that it was essential to incur debts for the same, and further in view of the obligation they were under, provided by the interlocutory decree, to pay their proportion of certain expenses in developing and operating the lease, are hardly in position to claim that the lien against the leasehold as provided by the statutes of Kansas must be so enforced that their right to net profits shall continue and be protected above the right of those who furnish material or labor necessary to make profit. The interlocutory decree provided, with reference to developing and operating the lease, as follows:

"It is further conceded by the parties that the owners of the respective interests are under obligation in proportion to their respective interests to pay all of the expenses of developing and operating said lease which have been incurred after the first well thereon was drilled and that the amount thereof should be determined by the master to be appointed in this cause; that for the payment of such sums the party or parties having advanced the same should be given a lien on said lease and upon the drilling equipment and machinery thereon and upon the proceeds of the oil sold therefrom, excepting a certain interest amounting to $20,000 hereinafter referred to."

We are satisfied that the entire leasehold was subject to the lien provided by the statute. Meadows et al. v. Bolin Oil Co., 108 Kan. 228, 194 Pac. 916; Crutcher et ux. v. Block, 19 Okl. 246, 91 Pac. 895, 14 Ann. Cas. 1029; Horn v. Clark Hardware Co., 54 Colo. 522, 131 Pac. 405, 45 L. R. A. (N. S.) 100.

It is claimed by counsel for appellants in their argument that this reservation of a one-eighth interest in the net profits is a reservation running with the lease and a burden upon any one who might operate under the lease by virtue of the chain of title derived through White & McCorkle. The sale ordered by the court breaks that chain. If the lien attaches to the leasehold interest, as we hold it does, then the court had the right to order the sale of the entire leasehold interest, if necessary, to pay the claims coming under section 4996, Kansas Statutes. When that was done, the parties who bought at the sale would not operate under any lease, title to which came to them by assignment from White & McCorkle, or from Campbell himself. The sale by the court in the enforcement of the liens was the same as a foreclosure, and if a foreclosure had been brought and a sale made of the entire leasehold interest, it would hardly be claimed that the Campbell interests were entitled to a proportion of the profits which the purchaser at judicial sale might make in operating the lease. As the chain of title under White & McCorkle could be broken by a foreclosure of liens, certainly the reservation of an interest in profits could not continue after the termination of such title.

Another consideration in the mind of the court as indicated by its opinion was that receiver's certificate had been issued under order of the court to keep the property a going concern, and this made possible the payment to the Campbell interests of the $20,000 provided in the contract of assignment. As is said by the trial court:

"Why, then, in equity, should not the Campbell interest pay its proportionate share of the receiver's certificates authorized, issued and outstanding, the proceeds of which were used in the protection and development of this property for the benefit of all." Record, p. 52.

We see no answer to this suggestion of the court. The sale was ordered, in part at least, to meet the demands of those who had furnished material for the development of the leasehold. There is some question as to the amount of these claims established, and some controversy took place between counsel for parties in the argument as to the amount thereof. The record is not clear on this subject. However, the facts were all before the court and we assume effort was made to protect the interests of all parties as best could be done under the

·circumstances, and the decree providing for separate sale of the Campbell interest would seem to so indicate.

There is no claim that there was any fraud or connivance of any of the parties to get rid of the Campbell interests. It is stated in appellants' brief that the lease was bought in by a trustee for the stockholders of the Red Star Oil Company, and that the matter was handled in a way to justify the conclusion that the purpose was to wipe out the one-eighth Campbell interest for the benefit of the stockholders of the Red Star Oil Company, rather than for the benefit of the creditors of the estate. This claim as to purchase by trustee for the stockholders of the Red Star Oil Company was denied in appellees' brief and such denial is supported by the record. The claim was conceded by counsel for appellants to be incorrect. Therefore no question of fraud is involved in the case. The conclusion of the court that all interest in the Bothwell leasehold was subject to the satisfaction of any valid mechanics' liens thereon and that the entire leasehold could be sold to enforce such liens including any interest reserved to Campbell, was correct.

That is decisive of the case and the decree of the trial court is affirmed.