The THIRTEENTH STREET
CORPORATION, a Colorado
Corporation, Petitioner,

v.

A-1 PLUMBING AND HEATING COMPANY, INC., a Colorado Corporation, Meyers Heating and Air Conditioning, City Electric Company of Boulder, Urban's Carpet Installation Service, Miles D. Bradfield, Inc., Kelley-Moore Paint Company, Inc., Boulder Flooring and Tile Company, Mike Jenkins, and David Cleaver, Respondents.

A-1 PLUMBING AND HEATING COMPANY, INC., a Colorado corporation, Meyers Heating and Air Conditioning, City Electric Company of Boulder, Urban's Carpet Installation Service, Miles D. Bradfield, Inc., Kelley-Moore Paint Company, Inc., Mike Jenkins, David Cleaver, and Boulder Flooring & Tile Company, Petitioners,

v.

The THIRTEENTH STREET
CORPORATION, a Colorado
corporation, Respondent.

Nos. 80SC106, 80SC110.

Supreme Court of Colorado,
En Banc.

Feb. 1, 1982.

Ronald J. Brotzman, Boulder, for A–1 Plumbing and Heating Co.

Terry W. Scoby, David C. Wells, Boulder, for Meyers Heating and Air Conditioning.

French & Stone, Robert W. Stone, Boulder, for City Elec. Co. of Boulder.

Madden and Strate, Robert McGahey, Jr., Denver, for Urban's Carpet Installation Service.

Newcomer & Douglas, William A. Ahlstrand, Boulder, for Miles Bradfield.

Michael H. Bynum, Boulder, for Kelley-Moore Paint Co., Inc.

Martin, Brauchli & Jevons, Jack O. Jevons, Boulder, for Mike Jenkins and David Cleaver.

Rogers, Dickerson & Kottke, Peter Rogers, Boulder, for Boulder Flooring & Tile Co.

No Appearance for respondent.

ROVIRA, Justice.

We granted certiorari to review the decision of the Colorado Court of Appeals in *A–1 Plumbing & Heating Co. v. Thirteenth St. Corp.*, Colo.App., 616 P.2d 141 (1980), which affirmed a judgment entered in favor of the mechanic's lien claimants. We also granted certiorari on the petition of the lien claimants who dispute the amount of interest allowed on the judgment. We affirm in part and reverse in part.

## I.

This is an action to determine the validity of mechanics' liens asserted by materialmen and mechanics against land and a building owned by the Thirteenth Street Corporation (owner or lessor) in Boulder, Colorado. The building has historically been used as a restaurant and tavern and was commonly known as "Tulagi's."

In 1967 Kenyon-Megill, Inc. (tenant) leased the property for six and a half years for use as a night club. The lease, which was never recorded, provided, *inter alia*, that: the tenant maintain and repair all improvements on the premises; the tenant be prohibited from making any improvements or alterations costing more than $250 without the consent of the lessor; if alterations or improvements were made, the tenant would require all contractors and subcontractors to waive their right to file mechanics' liens against the lessor; the tenant would indemnify the lessor for all costs arising by reason of any mechanic's lien; and upon expiration or termination of the lease, the tenant could remove fixtures, equipment or improvements procured by the tenant if such removal could be accomplished without damage to the premises.

In mid-1974 Richard McCabe, the managing agent of the tenant, advised the president of the lessor corporation of plans to change the liquor license of Tulagi's from a limited license to a general liquor license and to make extensive alterations of the interior of the building. Oral consent to the change in the liquor license and the proposed remodeling was given by the lessor's president.

In August 1974, after having obtained a change in the liquor license, the tenant began extensive remodeling of the building. Included in this project were the addition of a large storage room over an alley parking lot, the removal of an upstairs ceiling, installation of skylights, relocation of doors in structural walls, and the complete reconstruction of the bars and kitchen areas. The heating, plumbing, and electrical systems within the building were almost entirely replaced.

During the course of construction, the president of the lessor corporation was in the building. The nature and extent of the improvements being made were obvious, but he made no inquiry as to the specific details of the work. At no time during the course of construction were notices of nonliability for mechanics' liens posted on the premises or served upon individual lien claimants. Section 38–22–105(2), C.R.S. 1973.

On January 3, 1975, the remodeling project was terminated by the tenant before its completion. The improvements were not completed until the property had been leased to another tenant after the filing of the liens which are the subject of this action.

The trial court made extensive findings of fact, some of which have been incorporated in the introductory portion of this opinion. In addition, it found that the labor and materials were furnished by the respondent lien claimants at the request of the tenant and were used in the alteration and improvement of the premises; lien statements were filed within the statutorily prescribed period; all the improvements made by the respondents were securely attached to the building, and the tenant and the lien claimants contemplated that the improvements would be permanently installed and would remain in the building. The court also determined the reasonable value of the materials and labor provided by each respondent and found that removal of any of the improvements could be accomplished only by their virtual destruction.

The trial court concluded that: the owner corporation had orally authorized the improvements pursuant to the terms of the lease; if the tenant had in fact been exceeding its authority the owner could have avoided the imposition of liens upon its interest in the property by the use of section 38–22–105(2), C.R.S.1973, but did not do so; full knowledge of the precise details of the work undertaken is not required in order to hold the owner liable; the owner had notice that the building was undergoing extensive alterations; knowledge of the owner is to be determined on the basis of the standard set out in C.J.I.–Civ.2d 3.6 (1980),[1] and that the "trade fixture doctrine" was not applicable because the tenant's leasehold had terminated.

Judgment was entered in favor of each of the lien claimants with interest at the rate of 6% per annum from the last date that materials were furnished or labor was provided to the date of judgment and interest at 12% per annum from the date of judgment.

The court of appeals affirmed the judgment of the trial court; we now affirm the judgment of the court of appeals in part and reverse in part.

## II.

Thirteenth Street Corporation urges several grounds for reversal. First, it argues that the courts below failed to follow the mechanic's lien law which requires that the person whose interest is being charged with a lien actually own the improvement; second, that the trade fixture doctrine is applicable in mechanic's lien litigation; third, that the "knowledge" requirement of section 38–22–105(1), C.R.S.1973, is not satisfied by implied notice; fourth, that the trial court erred in failing to make a finding whether the lien claimants had a duty to investigate the authority of the tenant to contract for improvements which would subject the owner corporation's interests to a lien claim.

The respondent lien claimants filed a petition for writ of certiorari, urging that the court of appeals erred in affirming the decision of the trial court as to interest due on the judgment. We granted certiorari and now resolve that issue along with the claims of the Thirteenth Street Corporation.

## III.

The mechanic's lien statute, sections 38–22–101 to –126, C.R.S.1973, provides that under certain circumstances one who supplies materials or labor to be used to enhance the value of property shall have a lien upon the property to the extent of the goods and services provided. Under section 101, the materials or labor must have been

---

1. C.J.I.–Civ.2d 3.6 (1980). "Presumption of Knowledge Based on Duty to Inquire. Even though you find that (*name of person or party*) did not have actual knowledge of the (*describe fact*), if he had information which would have led a reasonable person to ·make inquiry through which he would have learned that fact, he will be presumed to have knowledge of that fact."

**1134**

supplied at the instance of the owner or by a person who is an agent of the owner. *See Stewart v. Talbott*, 58 Colo. 563, 146 P. 771 (1915); *Wilkins v. Abell*, 26 Colo. 462, 58 P. 612 (1899). These cases hold that there must be a contract with the owner, either directly or indirectly, before a lien may attach.

■ However, in certain situations, a lien may attach against property even though the owner of the property did not contract with the lien claimant for the materials or services. Section 38–22–105 provides:

"(1) Any building, ... structure or other improvement mentioned in this article, constructed, altered, added to, removed to, or repaired, either in whole or in part, upon or in any land with the knowledge of the owner ... shall be held to have been erected, constructed, altered, removed, repaired, or done at the instance and request of such owner or person, *including landlord ... who by lease or contract has authorized such improvements*, but so far only as to subject his interest to a lien therefor as provided in this section.

"(2) Such interest so owned or claimed shall be subject to any lien given by the provisions of this article, unless such owner or person within five days after he has obtained notice of the erection, construction, alteration, removal, addition, repair, or other improvement, gives notice that his interests shall not be subject to any lien for the same by serving a written or printed notice to that effect, personally, upon all persons performing labor or furnishing skill, materials, machinery, or other fixtures therefor, or within five days after he has obtained the notice aforesaid, or notice of the intended erection, construction, alteration, removal, addition, repair, or other improvement gives such notice by posting and keeping posted a written or printed notice to the effect aforesaid, in some conspicuous place upon

said land or upon the building or other improvements situate thereon." (emphasis added to indicate language added by amendment in 1965. L. 65, p. 851, § 3).

Prior to its amendment in 1965, a lien could only be imposed upon an owner's interest in property, pursuant to section 105, when unauthorized improvements were made with the owner's knowledge and the owner failed to serve a written notice or post a notice of nonliability in accord with the provisions of this section. Attachment of the lien was allowed not because of any contractual relationship with the owner; but because, under the circumstances, the owner was estopped from "asserting that unauthorized improvements were not made at his instance and request. . . ." *Grimm v. Yates*, 58 Colo. 268, 278, 145 P. 696, 699 (1914).

■ Section 105 was expanded in 1965, however, to specifically include within the scope of its coverage a landlord or vendor who, by lease or contract, has authorized the improvement. L. 65, p. 851, § 3. Now, a landlord who has authorized the tenant to make improvements on the leasehold property may be subject to a mechanic's lien if he has knowledge of the fact that the lien claimant is providing materials or services for the improvements but does not post notice that his interest will not be subject to lien.[2]

Here, the owner claims that the mechanic's lien law requires that the person whose interest is being charged with a lien actually own the improvement. It argues that the trial court erred in failing to make a finding as to whether it owned the improvements. We do not agree.

■■ The purpose of the mechanic's lien law is to benefit and protect those who supply labor, materials, or services which enhance the value or condition of another's property. *3190 Corp. v. Gould*, 163 Colo.

---

2. Some jurisdictions allow a lien to attach if the lease authorizes improvements, even if the owner does not have actual knowledge of the work. *See, e.g., Ah Louis v. Harwood*, 140 Cal. 500, 74 P. 41 (1903); *Evans v. Judson*, 120 Cal.

282, 52 P. 585 (1898). This is based upon a theory that, under the circumstances, the landlord has constructive knowledge of the work. 44 *Cal.Jur.3d, Mechanics' Liens* § 23 (1978).

356, 431 P.2d 466 (1967). When, as in the present case, the lease authorizes the tenant to make improvements on the property and the landlord has knowledge that improvements are being made, but fails to post notice of nonliability, a lien may attach to the landlord's interest pursuant to section 105. This section does not require that the lien claimant establish that the property owner is also the owner of the improvements.

The trial court found that the premises were improved for continued use as a restaurant and tavern, the improvements were securely attached to the premises and removal would virtually destroy them, and the tenant and the lien claimants contemplated that the improvements would be permanently installed and would remain with the building. Furthermore, the owner had notice that the lien claimants were providing materials and labor for the improvements to the property. Under these circumstances, a lien may properly attach to the owner's property pursuant to section 38–22–105, C.R.S. 1973.

The owner, relying on *Stewart v. Talbott*, 58 Colo. 563, 146 P. 771 (1915), contends that a lien may be imposed upon a lessor's interest only when improvements are made as a result of a joint undertaking between the lessor and lessee. This case, however, is distinguishable from the case at hand.

In *Stewart* the court noted that when there was a joint undertaking between a landlord and tenant for the purpose of constructing a building on the landlord's property, a lien could be imposed upon the property pursuant to the predecessor of section 38–22–101, C.R.S.1973. This section requires that the lien be founded on a contract with the owner or his agent. *Wilkins v. Abell, supra.* Therefore, a joint undertaking between the landlord and tenant would fulfill that requirement.

In the case *sub judice*, however, the lien is being imposed pursuant to section 38–22–105, C.R.S.1973. This section does not require a contract with the owner or his agent; thus, the owner's argument that a joint undertaking is required is without merit.

### IV.

The owner next contends that the trial court erred in ruling that the trade fixture doctrine did not apply to mechanic's lien claimants. It argues that the trade fixture doctrine applies in determining ownership in a mechanic's lien case and that its property interest could not be subject to a mechanic's lien if the items provided by the lien claimants were trade fixtures.[3]

In *Horn v. Clark Hardware Co.*, 54 Colo. 522, 131 P. 405 (1913), this court noted that with respect to a third-party lien claimant the rights given to a tenant by operation of the trade fixture doctrine were not dispositive.[4] When a third-party lien claimant is involved, the vital question is whether the improvement was affixed to the property with the intention that it

---

3. The trade fixture doctrine is an exception to the law of fixtures, designed to encourage trade by protecting a tenant's investment in the leasehold. *See Van Ness v. Pacard*, 27 U.S. (2 Pet.) 137, 7 L.Ed. 374 (1829). Generally, once an item is affixed to realty, it becomes part thereof and will be transferred with the realty. The trade fixture exception, however, permits a tenant to remove fixtures which have been attached to the realty for the purposes of carrying on the business for which the premises were leased. *Carper v. Risdon*, 19 Colo.App. 530, 76 P. 744 (1904); *Updegraff v. Lesem*, 15 Colo.App. 297, 62 P. 342 (1900).

4. In *Horn* it was held that:
"The lessor and lessee might agree between themselves that the machinery could be removed by the latter when the lease expired, or was forfeited, or by reason of the relation between them, it might be that, independent of any agreement, the machinery could be removed by the lessee on the happening of either of these events, and that, as between them, the machinery, in determining their rights, would not be regarded as a fixture or part of the realty, but their private agreement, or their respective rights in the machinery by operation of law, would not change the character of this property, so far as the rights of third persons were concerned, who claimed a lien thereon, as realty."
54 Colo. at 527–28, 131 P. at 407.

should become part of the premises. *Id.* If it was, then the lien may attach to the owner's property.

 Here, the court found that all of the improvements were securely attached to the premises and that the tenant and lien claimants contemplated that the improvements would be permanently installed and would remain in the building. Given this finding, it is unnecessary to consider the owner's argument further. The findings of the trial court are consistent with the test set forth in *Horn*.[5] Since those findings are supported by the record, they are binding on this court. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970); *Samett v. Whelan*, 147 Colo. 41, 362 P.2d 559 (1961).

## V.

 The owner corporation next argues that the knowledge requirement of section 38–22–105(1), C.R.S.1973, is not satisfied absent a showing of actual knowledge. It contends that the trial court erred in ruling that the knowledge requirement of section 105 was fulfilled by a finding of notice.

The trial court ruled that even if the owner corporation did not have actual knowledge of all the specific work being provided, it had information which would have led a reasonably prudent person to investigate further; thus, knowledge of the specific facts could be presumed. We agree.

Knowledge as it is used in section 105 is virtually synonymous with notice. This is evidenced by the legislature's use of the word notice in section 105(2). The uncontested finding of the trial court that the president of the owner corporation observed the alterations being made is sufficient to sustain a conclusion that the owner had knowledge within the meaning of section 105. Furthermore, contrary to the argument of the owner, the fact that it may not have had knowledge of the legal consequences of its observation of the work and did not notify potential lien claimants that

its interest would not be subject to lien, does not render the statute unconstitutional as applied to it.

## VI.

Next, the owner corporation argues that the trial court erred in failing to make a finding whether the lien claimants had an affirmative duty to investigate the authority of the tenant to contract for improvements which would subject the owner corporation's interests to a lien claim. We disagree.

 Section 38–22–105, C.R.S.1973, does not impose a duty upon lien claimants to investigate the authority of the tenant to contract for improvements. To impose such a duty would contravene the principle that the mechanic's lien laws should be construed in favor of lien claimants who have met the requirements of the statute. *3190 Corp. v. Gould, supra.*

 The burden of notifying the lien claimant that the owner's interest will not be subject to a mechanic's lien is on the owner. Section 38–22–105(2), C.R.S.1973. In this case there is no allegation that any of the lien claimants had such notice. This court will not impose upon the lien claimants a duty not required by statute.

## VII.

The lien claimants contend that the court of appeals erred in affirming the decision of the trial court as to the interest due on the judgment.

 Interest to the lien claimants was awarded at a rate of 6% per annum from the date their accounts became due until November 21, 1977, the date judgment was entered. The trial court then awarded interest at a rate of 12% per annum from the date of judgment. The court of appeals affirmed. Relying upon *Weather Eng'r & Mfg., Inc. v. Pinon Springs Condominiums, Inc.*, 192 Colo. 495, 563 P.2d 346 (1977), it held that the 12% rate of interest provided

---

5. Furthermore, we note that this finding would preclude any determination that these improve-

ments were trade fixtures. *See Andrews v. Williams*, 115 Colo. 478, 173 P.2d 882 (1946).

for in section 38–22–101(5), C.R.S.1973 (1981 Supp.), would apply only from the date of judgment since the lien claims arose prior to the effective date of the statute.

The lien claimants concede that the trial court and court of appeals were correct in awarding interest at a rate of 6% per annum commencing when the accounts became due, but argue that the 12% per annum rate of interest established by section 38–22–101(5), C.R.S.1973 (1981 Supp.), should have been applied from October 1, 1975 (the effective date of that section), rather than from the date judgment was entered.

In *Weather,* we interpreted section 38–22–101(5), C.R.S.1973 (1981 Supp.). This section provides:

"All claimants who establish the right to a lien or claim under any of the provisions of this article shall be entitled to receive interest on any such lien or claim at the rate provided for under the terms of any contract or agreement under which the labor or material was supplied or, in the absence of an agreed rate, at the rate of twelve percent per annum."

The effective date of this section was October 1, 1975. L. 75, p. 1426, § 6.

The lien claim in *Weather* arose prior to the effective date of this provision. Judgment, however, was rendered on October 22, 1975, three weeks after the effective date. The trial court awarded interest at a rate of 12%, in accordance with the provisions of section 101(5), from the date of judgment until satisfaction. We affirmed the award of 12% interest for the post-judgment period, holding that this was consistent with the principle that statutes are to be applied prospectively, since the judgment was entered after the effective date of the statute.

Here, the lien claimants point out that in *Weather* the only issue decided was whether the trial court erred in applying section 101(5) from the date of the judgment. The lien claimants in *Weather* did not present the argument that the 12% interest rate

should have been applied from the effective date of section 101(5). Thus, by affirming the trial court, we did not address the question of whether the interest rate of 12% provided by section 101(5) should apply from the effective date of the statute.

In enacting section 101(5), the legislature provided that it was to take effect October 1, 1975. L. 75, p. 1426, § 6. There is no indication that the legislature intended the date of judgment to be of import in applying the statute to a particular set of facts. Generally, an act will become effective on the date provided in the act itself. *Colo. Const.* Art. V, § 19.

Here, the interest rate provided in section 101(5) will apply as of the effective date of the act, October 1, 1975. There is no problem of retroactivity [6] because the statute is only being applied as of its effective date. *Weather Eng'r & Mfg., Inc. v. Pinon Springs Condominiums, Inc., supra.*

Lien claimant City Electric Company asserts that it is entitled to receive interest at the rate established in the contract between it and the tenant.

A reading of the mechanic's lien interest statute reveals that the claimant is "entitled to receive interest ... at the rate provided for under the terms of any contract or agreement under which the labor or material was supplied ...." Section 38–22–101(5), C.R.S.1973 (1981 Supp.). In the present case, City Electric Company and the tenant agreed that interest on any past-due billings would accrue at a rate of 1½% per month. The owner was not a party to the contract; nonetheless, this contractual provision will apply because the lien attached to the owner's property by way of section 38–22–105, C.R.S.1973, and the legislature, by using the clause "any contract or agreement," in section 101(5), has evidenced an intent that the contractual interest rate agreed upon between the claimant and the tenant will apply to a lien against the owner's property. Other interpretations of this statute would render the clause "any con-

**6.** *See Colo.Const.* Art. II, Sec. 11; section 2–4–202, C.R.S.1973 (1980 Repl. Vol. 1B) (providing that statutes are presumed to be prospective in operation).

tract or agreement" meaningless, and this court is obligated to give effect to each word and clause used in a statute whenever it is at all possible. *Johnston v. City Council*, 177 Colo. 223, 493 P.2d 651 (1972).

We have already established that section 101(5) will apply as of October 1, 1975, the effective date of the enactment. Therefore, we conclude that City Electric Company is entitled to receive the contractual rate of interest from October 1, 1975, until satisfaction of judgment. Prior to the effective date of the mechanic's lien interest statute, City Electric Company will receive interest at a rate of 6% per annum, in accord with the provisions of the general interest statute, section 5–12–102, C.R.S.1973, as it existed at that time. All other lien claimants are entitled to receive interest at a rate of 6% per annum from the date their accounts became due until October 1, 1975, and 12% per annum thereafter until satisfaction of the judgment.

The decision of the court of appeals is affirmed on all other issues.