CHAMBLISS/JENKINS ASSOCIATES, a Partnership, Plaintiff-Appellant and Cross-Appellee,

v.

Louise FORSTER, M.C. Schumann, Betty June Schumann, Harold W. Reeder, Ann Reeder, Alfred B. Carrick, Eula B. Carrick, La Villa Grande, Inc., a non-profit corporation, Bethesda Care Centers, a Nebraska corporation, Defendants-Appellees and Cross-Appellants,

Columbine Village, Inc., a non-profit corporation, Columbia Savings & Loan Association, First National Bank-North in Grand Junction, Grand Junction Drainage District, David C. Edwards, Jack R. Haney, d/b/a J.R. Haney & Associates, and Gena Harrison, Public Trustee, Defendants.

No. 81CA0644.

Colorado Court of Appeals, Div. III.

May 6, 1982.

As Modified on Denial of Rehearing June 17, 1982.

William M. Kane, Grand Junction, for plaintiff-appellant and cross-appellee.

Dufford, Waldeck, Ruland, Wise & Milburn, Amanda D. Bailey, Grand Junction, for defendants-appellees and cross-appellants.

KIRSHBAUM, Judge.

This appeal involves a summary judgment entered by the trial court. Plaintiff architectural firm, Chambliss/Jenkins Associates (CJA), appeals the dismissal of its complaint and the denial of its motion to amend the complaint. Defendants, Louise Forster, M.C. Schumann, Betty June Schumann, Harold W. Reeder, Ann Reeder, Alfred B. Carrick, Eula B. Carrick, La Villa Grande, Inc., and Bethesda Care Centers, cross-appeal the dismissal of their counterclaims.[1] We affirm in part and reverse in part.

The record reveals the following facts. In the early 1970s, Forster, the Schumanns, the Reeders, the Carricks, and La Villa Grande, Inc., (owners)[2] purchased certain real property in Mesa County, Colorado. They constructed a nursing home on a portion of the property and then proposed to build a retirement center on the remainder. In late 1976, however, they concluded that they could not obtain appropriate financing for the project.

During 1976, the owners came into contact with defendant Columbine Village, Inc., (Columbine) a non-profit corporation formed by persons who also desired to develop a "life care" retirement center in Mesa County. In 1977, the owners and Columbine entered into the first of several option agreements for the purchase of the nursing home and adjoining property.

Columbine ultimately decided to obtain its financing through the sale of tax-exempt municipal bonds. It engaged the services of Municipal Bond Advisors of America (MBA) for this purpose and obtained new options from the owners extending through July 31, 1979. These options provided for early termination in the event Columbine did not submit written evidence to owners, by May 10, 1979, that MBA had obtained a commitment for the sale of the bonds.

On May 10, 1979, Columbine received a letter from MBA stating that MBA had secured a commitment to purchase the bonds and that MBA awaited the "receipt of properly signed documents as previously outlined." Columbine immediately forwarded this letter to the owners. On May 11, the owners' selling agent, Edwards, wrote a letter to Columbine that contained the following pertinent language:

"This letter will serve to remove the contingencies contained in the Addendum to both option agreements referred to above, whereby Municipal Bond Advisors of America, Inc. was to submit written evidence regarding the bond issue.

"Principals and LaVilla Grande have accepted the written evidence submitted by Municipal Bond Advisors of America, Inc. subject to the following:

. . . .

"2. The documents that were discussed in the letter of May 10, 1979 which included the architect's contract, the contractor's contract and option agreements

---

[1]. Defendant David C. Edwards (Edwards) has been treated as a cross-appellant by the parties. However, he was not a named party to the motion for summary judgment filed by these other defendants.

[2]. The parties' briefs refer to Edwards as an "owner" of the subject property. However, the record establishes only that Edwards held a deed of trust on the subject property. He is not alleged by any pleading to be an "owner."

shall be completed on or before 10 days from the date of this letter."

The letter was hand-delivered to and accepted by Columbine that same day.

On May 12, 1979, Columbine executed a written contract with CJA which required CJA to prepare architectural plans and drawings for the proposed life care center in return for a fee of $95,400. In August 1979, owners and Columbine agreed to extend the options through October 1, 1979. The bonds were not purchased when offered for sale, and Columbine elected to forego its options.

When Columbine failed to pay for the architectural plans and designs which had been prepared, CJA filed a mechanic's lien against the interests of the owners, Edwards, and Bethesda Care Center (Bethesda) in the subject property. (Bethesda purchased a portion of the subject property from La Villa Grande, Inc., in 1980.) CJA also filed this foreclosure suit against Columbine, owners, Edwards, Bethesda, others not party to this appeal, and Jack R. Haney, d/b/a J.R. Haney & Associates (Haney), an unpaid subcontractor of CJA who had filed his own mechanic's lien on the property. (CJA obtained a default judgment against Columbine; the dispute between CJA and Haney has been resolved.)

The owners and Bethesda jointly filed a motion for summary judgment requesting dismissal of CJA's complaint and of Haney's cross-claim on the ground that the asserted mechanic's liens were invalid. CJA filed a motion for partial summary judgment, requesting an adjudication of the validity of its lien statement. No party requested summary judgment on the counterclaims and cross-claims of the owners and Bethesda against CJA and Haney.

Ruling that CJA had not established any right to impose a mechanic's lien on the subject property, the trial court granted the motion of the owners and Bethesda to dismiss CJA's complaint. The trial court also dismissed defendants' counterclaim "as unproven." The trial court did not rule on Haney's cross-claim, as requested by the owners and Bethesda in their summary

judgment motion. And, contrary to the statements of the owners, Bethesda, and Edwards in their appellate briefs, the record reveals that the trial court did not dismiss their cross-claims against Haney. In denying post-trial motions filed by the owners, Bethesda, and Edwards and by CJA, the trial court held "that this determination shall provide a final judgment at the trial court level for all purposes of appellate review." We conclude that this language sufficiently complies with the requirements of C.R.C.P. 54(b).

## I. APPEAL OF CJA

CJA contends that the trial court erred in dismissing its complaint against the owners and Bethesda. We agree.

C.R.C.P. 56 permits the entry of a summary judgment when the pleadings and other evidentiary documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Jones v. Dressel*, Colo., 623 P.2d 370 (1981). The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of fact in order to prevail, and any doubts as to the existence of such an issue must be resolved against the moving party. *Primock v. Hamilton*, 168 Colo. 524, 452 P.2d 375 (1969).

Section 38–22–101(1), C.R.S. 1973, upon which CJA relies, provides, in pertinent part, as follows:

"[A]rchitects, . . . who have furnished designs, plans, plats, maps, specifications, drawings, . . . or who have rendered other professional or skilled service, . . . or work done or to be done, . . . shall have a lien upon the property upon which they have . . . rendered service . . . for the value of such . . . services rendered . . . whether at the instance of the owner, or of any other person acting by his authority or under him, as agent, contractor, or otherwise . . . ."

This statute permits architects who, at the request of a property owner, have provided plans for proposed property improvements, to file a lien against the owner's property.

*James H. Stewart & Associates, Inc. v. Naredel of Colorado, Inc.,* 39 Colo.App. 552, 571 P.2d 738 (1977).

■ While an owner is not subject to an architect's lien under this statute unless he or a person authorized by him has contracted for the architect's services, an owner who, as here alleged, directly authorizes another to hire an architect to draft plans for improvements on the owner's property may be subject to such a lien. *See Colorado Gold Dredging Co. v. Stearns-Roger Mfg. Co.,* 60 Colo. 412, 153 P. 765 (1916).

CJA concedes that the owners did not directly request the performance of architectural services here. CJA contends, however, that the May 11, 1979, letter establishes that Columbine was acting by the authority of or under the owners when it secured CJA's services, and that the hiring of an architect became a term of the option agreements. Thus, the legal significance of that correspondence is critical for the determination of this issue.

■ When an agreement between parties is contained in more than one instrument, those instruments must be construed together as though they comprised a single document. *Fuller & Co. v. Mountain States Investment Builders,* 37 Colo.App. 201, 546 P.2d 977 (1975). Further, written documents containing ambiguities or unclear language must be construed in accordance with the intent of the parties, and relevant extraneous evidence may be considered to resolve the factual question of the parties' intent. *Palipchak v. Kent Construction Co.,* 38 Colo.App. 146, 554 P.2d 718 (1976).

■ Here, the May 11, 1979, letter is ambiguous when read in conjunction with the option agreements, *see People v. Johnson,* 199 Colo. 248, 618 P.2d 262 (1980); *Hahl v. Langfur Construction Corp.,* 529 P.2d 1369 (Colo. App. 1974) (not selected for official publication), and Columbine's written acceptance of the letter may have resulted in a modification of the option agreements. Hence, disputes of fact exist concerning the intent of the parties in sending and accepting the letter and whether the owners in fact authorized, expressly or impliedly, the hiring of an architectural firm.

The order granting summary judgment precluded any testimony or evidence concerning the intent of the parties. This was error. *See Palipchak v. Kent Construction Co., supra.*

CJA also contends that it is entitled to assert a mechanic's lien pursuant to § 38–22–105, C.R.S. 1973. We disagree. That provision provides, in pertinent part:

"(1) Any building ... and every structure or *other improvement mentioned in this article, constructed, altered, added to, removed to, or repaired,* either in whole or in part, *upon or in any land* with the knowledge of the owner or reputed owner of such land ... shall be held to have been *erected, constructed, altered, removed, repaired, or done* at the instance and request of such owner....

"(2) Such interest so owned ... shall be subject to any lien given by the provisions of this article, unless such owner ... within five days after he has obtained notice of the *erection, construction, alteration, removal, addition, repair, or other improvement,* gives notice that his interests shall not be subject to any lien for the same by serving a written or printed notice to that effect, personally, upon all persons performing labor or furnishing skill, materials, machinery, or other fixtures therefor, or within five days after he has obtained the notice aforesaid, or notice of the intended *erection, construction, alteration, removal, addition, repair, or other improvement* gives such notice by posting and keeping posted a written or printed notice to the effect aforesaid, in some conspicuous place upon said land or upon the building or *other improvements situate thereon.*" Section 38–22–105(1) and (2), C.R.S. 1973 (emphasis added).

■ The statutory language establishes that only persons who participate in enumerated activities "upon or in any land" may assert a lien under this provision. CJA did not participate in the "erection, construction, alteration, removal, addition, re-

pair, or other improvement" of any building, structure, or other improvement situated upon or in owners' property. Hence, § 38–22–105, C.R.S. 1973, does not authorize the filing of a lien by CJA.

CJA finally contends that the trial court abused its discretion in denying its motion for leave to amend the complaint. We disagree.

In its motion for leave to amend its complaint, CJA asserted that it was advised that Frederick A. Schumann had purchased a portion of the subject real property; that as an owner of the property Schumann was a necessary party under § 38–22–111, C.R.S. 1973; and that its proposed amended complaint "does not seek to assert a new or additional theories or causes of action against the Defendants herein." An examination of the proposed amended complaint reveals, however, that CJA did seek to assert a new and additional theory against defendant Edwards. In particular, Edwards, who was not listed in the original complaint as "one . . . of the . . . owners of certain real property located in Mesa County, Colorado," was named in the proposed first amended complaint as "one . . . of the . . . legal or beneficial owners" of the property.

 Under these circumstances, without addressing the merits of CJA's argument that Schumann was a necessary party to the action, *see generally Howard v. Fisher,* 86 Colo. 493, 283 P. 1042 (1929), we conclude that the trial court did not abuse its discretion in denying CJA's motion to amend its complaint. *See generally H.W. Houston Construction Co. v. District Court,* Colo., 632 P.2d 563 (1981); *Varner v. District Court,* Colo., 618 P.2d 1388 (1980); *Jenkins v. Glen & Helen Aircraft Inc.,* 42 Colo.App. 118, 590 P.2d 983 (1979).

## II. CROSS–APPEAL OF THE OWNERS AND BETHESDA

The owners and Bethesda contend that the trial court erred in dismissing their counterclaims against CJA. CJA concedes in its reply brief that the trial court erred in this respect. We agree.

 No party requested summary judgment respecting these counterclaims. Furthermore, the record reveals that genuine controversy exists over material facts. Thus, the trial court erred in dismissing these counterclaims. *See McCormick v. Diamond Shamrock Corp.,* 175 Colo. 406, 487 P.2d 1333 (1971).

The judgment is reversed insofar as it dismisses CJA's complaint and the counterclaims of the owners and Bethesda. The judgment is affirmed insofar as it denies CJA's motion for leave to amend its complaint.

STERNBERG and TURSI, JJ., concur.