SERACUSE LAWLER & PARTNERS, INC., a Colorado corporation, Marvin Hatami and Associates, Brady Corporation, a Colorado corporation, as Individuals, and doing business as Design Build Joint Venture Team, a Colorado joint venture, Plaintiffs-Appellees and Cross-Appellants,

v.

COPPER MOUNTAIN, a Colorado limited partnership, Copper Mountain, Inc., a Delaware corporation, Defendants-Appellants and Cross-Appellees,

and

Broker House Development Corporation, a Colorado corporation, Broker House, Ltd., a Colorado corporation, Hurst and Burr Plumbing & Heating Co., Inc., a corporation, and Eugene Kennish, Defendants.

No. 79CA0538.

Colorado Court of Appeals, Div. I.

June 17, 1982.

Rehearing Denied July 15, 1982.

Certiorari Denied Nov. 22, 1982.

Lutz & Gilbert, James T. Gilbert, Arvada, Richard L. Whitworth, Wheatridge, for plaintiffs-appellees and cross-appellants.

Holme, Roberts & Owen, Donald K. Bain, Robert M. Ackerman, Denver, for defendants-appellants and cross-appellees.

PIERCE, Judge.

In this consolidated action for foreclosure of a mechanic's lien, defendants, Copper Mountain and Copper Mountain, Inc., (Copper Mountain) appeal the judgment entered in favor of a joint venture and its individual members which provided architectural services. The prevailing plaintiffs cross-appeal the amount awarded. We reverse and remand.

The record contains the following facts. In January 1973, plaintiffs contracted with Broker House Development Corporation to provide architectural services for a hotel to be constructed on property owned by Copper Mountain. At the time that contract was executed, Broker House held an option to lease the property from Copper Mountain. Broker House did not exercise the option before it expired on June 1, 1973.

Various Copper Mountain principals were active members of the Copper Mountain Planning Architectural Committee (Committee) which represented Copper Mountain in the review and approval of designs for projects at the Copper Mountain ski resort. Broker House was required to submit its development plans to this Committee. Consequently, Copper Mountain, through the Committee, had knowledge of the proposed development of the hotel and of plaintiffs' work.

Initially, the hotel was designed to have underground parking. Excavation of the site began on June 6, 1973, and continued until June 22, 1973, when the excavation filled with water. Plaintiffs continued with the redesign work until early 1974 in an attempt to alleviate the water problem. Copper Mountain was kept advised of plaintiffs' progress through the Committee. The development was abandoned when Broker House failed to obtain additional financing.

Because they had not been paid, plaintiffs filed a mechanic's lien against Copper Mountain's property in November 1973. Four days later, Copper Mountain filed a notice of nonresponsibility pursuant to § 38–22–105(2), C.R.S.1973. Plaintiffs settled their dispute with Broker House by an agreement not to execute. The trial court limited plaintiffs' award to only the value of their services up to the date Broker House's lease option expired.

Copper Mountain asserts that there was no lienable claim. Plaintiffs cross-appeal asserting that they were entitled to recover the full amount of their services including those provided after the lease option expired. We agree with plaintiffs.

I.

The trial court held that plaintiffs could foreclose the lien on Copper Mountain's

property for the reasonable value of their services rendered until the expiration of Broker House's lease option. The trial court allowed this foreclosure by concluding Broker House held an ownership interest in the Copper Mountain property through their lease option and because it had directly contracted with plaintiffs. The trial court, however, found that no contract existed between plaintiffs and Copper Mountain such as would justify their attaching a lien against Copper Mountain's property pursuant to § 38–22–101, C.R.S.1973.

 Even if a lease option is assumed to be a sufficient transferable ownership interest for a lien to attach, *see Bankers Building & Loan Ass'n v. Fleming Brothers Lumber Co.,* 83 Colo. 335, 264 P. 1087 (1928), the interest in the lease option, not the prospective lessor's interest, is subject to the claimant's lien. *See Cary Hardware v. McCarty,* 10 Colo.App. 200, 50 P. 744 (1897). The trial court therefore erroneously held that plaintiffs could attach the lien on Copper Mountain's property for the value of plaintiffs' services until the lease option expired because of Broker House's interest in Copper Mountain's property.

 Under the mechanics' lien statute, two methods exist to establish a mechanic's lien for architectural services. Pursuant to § 38–22–101(1), C.R.S.1973, an architect who provides plans for proposed property improvements at a property owner's request, is permitted to file a lien against the owner's property. Chambliss/Jenkins Associates v. Forster,* Colo.App., 650 P.2d 1315 (1982); *James H. Stewart & Associates, Inc. v. Naredel of Colorado, Inc.,* 39 Colo.App. 552, 571 P.2d 738 (1977). An owner, however, is not subject to a lien under § 38–22–101(1), C.R.S.1973, unless the owner or person who is the owner's agent has contracted for the architectural services. *Thirteenth Street Corp. v. A–1 Plumbing & Heating Co.,* Colo., 640 P.2d 1130 (1982); *Chambliss/Jenkins Associates v. Forster, supra.* The trial court found that Copper

Mountain did not contract directly or indirectly with plaintiffs here for their services. We need not address the propriety of that determination because of the disposition based on another section of the statute which follows.

## II.

 A mechanic's lien may also attach to property pursuant to § 38–22–105, C.R.S. 1973, though the owner did not contract for the architectural services. Under § 38–22–105, C.R.S.1973, the lien claimant must "participate in the 'erection, construction, alteration, removal, addition, repair or other improvement' of any building, structure or other improvement situated upon or in owner's property" with the knowledge of the owner. *Chambliss/Jenkins Associates v. Forster, supra.*

Copper Mountain argues that a lien could not be established by plaintiffs under § 38–22–105, C.R.S.1973, because there was no improvement which would enhance the value or the condition of Copper Mountain's property. We do not agree.

Although plaintiffs did not perform any on-site work themselves, there was evidence that an excavation occurred pursuant to plaintiffs' plans and specifications. The trial court held that the excavation did not enhance the value of the property because costs would be incurred to fill in the excavation. We do not agree with that determination.

 The mechanics' lien law is to protect persons whose labor or material enhances the value or the condition of another's real property. *Thirteenth Street Corp., supra; Bishop v. Moore,* 137 Colo. 263, 323 P.2d 897 (1958); *Kobayashi v. Meehleis Steel Co.,* 28 Colo.App. 327, 472 P.2d 724 (1970). In the present case the architectural services did enhance the value or condition of the real estate because an improvement, the excavation, was initiated pursuant to plaintiffs' efforts. An architect's preliminary work constitutes the com-

mencement of an improvement or a structure. *Weather Engineering & Manufacturing, Inc. v. Pinon Springs Condos., Inc.,* 192 Colo. 495, 563 P.2d 346 (1977); *Bankers Trust Co. v. El Paso Pre-Cast Co.,* 192 Colo. 468, 560 P.2d 457 (1977).

■ An improvement "is a part of a project for the construction of a building or structure on the property." *Ciancio v. Serafini,* 40 Colo.App. 168, 574 P.2d 876 (1977). The excavation here was part of the project for the construction of the underground parking facilities of the hotel. *See Robison v. Thatcher,* 252 Or. 603, 451 P.2d 863 (1969).

■ For the purposes of the mechanics' lien law, the claimant is not to be charged with another's mistake in judgment which results in the noncompletion of the project. To hold otherwise would defeat the purpose of the statute. An owner could easily shutdown a project before substantial completion, and, arguing that a partially completed project represents no value enhancement to the property, he could thereby leave those who worked on the project without any lien remedies.

Copper Mountain, through its Committee, had sufficient knowledge of the construction of the improvement under § 38–22–105, C.R.S.1973, and the notice it gave was not within five days after it knew of the construction of the improvement. *See Thirteenth Street Corp., supra.* Therefore, a lien was established by plaintiffs pursuant to § 38–22–105, C.R.S.1973.

Copper Mountain's other contentions of error were properly addressed by the trial court and are without merit.

The judgment is reversed and the cause is remanded for the trial court to determine the reasonable value of plaintiffs' services including those incurred after Broker House's lease option expired and to enter an appropriate judgment based on that amount.

COYTE and SMITH, JJ., concur.