(No. 19636.—

S. N. CROWEN, Plaintiff in Error, *vs.* HYMAN MEYER *et al.* Defendants in Error.

*Opinion filed December 18, 1930.*

WILLIAM McKINLEY, and PAUL E. PRICE, for plaintiff in error.

GALLAGHER, SHULMAN & ABRAMS, (MEYER ABRAMS, of counsel,) for defendants in error.

Per CURIAM: Plaintiff in error filed in the circuit court of Cook county a bill seeking to establish a lien on two lots owned by defendants in error, for his services as an architect.

The bill sets out that Hyman Meyer and Rose Meyer are husband and wife and own the property upon which a lien is sought to be established; that Hyman Meyer on August 20, 1925, entered into a written agreement with plaintiff in error to prepare plans and specifications for, and to superintend the erection of, a laundry building to be located on lots 31 and 32, same being between Ninety-eighth and Ninety-ninth streets on the east side of South Michigan avenue, in Chicago, for which services Meyer agreed to pay a sum equal to six per cent of the total cost of the building; that the contract was entered into with full knowledge and consent of one Charles J. Sopkin, who was the then owner of the two lots but who afterwards conveyed them to defendants in error. The bill alleges that the plans and specifications were completed in accordance with the provisions of this contract and were approved by Hyman Meyer; that Meyer thereafter requested certain changes in the plans, which were made; that plaintiff in error was then authorized to receive bids; that by reason of the services of plaintiff in error there became due him the sum of $1923.60, of which he has received $500, and that after the completion of the plans and specifications as changed,

Meyer, who was to erect the building, refused to proceed. The bill alleges a demand for payment of the balance of $1423.60 and interest thereon, and that on January 23, 1926, plaintiff in error filed in the office of the registrar of titles a notice of lien. Attached to the bill as an exhibit is a statement of account between plaintiff in error and Meyer, dated January 11, 1926. The total cost of the building is therein shown to be $45,800; total architect's fee at six per cent, $2748; due Crowen, seven-tenths of six per cent, $1923.60, less $500 received, or a total of $1423.60.

The answer of Hyman Meyer and Rose Meyer admits the execution of the contract and admits that on the 26th of April, 1926, they purchased from Sopkin the real estate described in the bill of complaint, but denies that complainant prepared the plans and specifications in accordance with the contract or that they authorized plaintiff in error to receive bids. The answer further states that plaintiff in error was told by Meyer that the latter desired a building costing approximately $18,000 to $19,000 and that the cost of the building planned by plaintiff in error greatly exceeded that amount. The answer admits that Meyer paid $500, and alleges that that amount was to be in full payment of plaintiff in error's claim. Rose Meyer denied that she had ordered any work to be done or authorized anyone to order same for her.

The cause was referred to the master, who found that Hyman Meyer engaged the services of plaintiff in error as an architect in building a certain wet-wash laundry upon the premises described in the bill; that at the time of the execution of the contract Charles J. Sopkin was the owner of the premises described; that the contract between complainant and Meyer was entered into with full knowledge and consent of, and the work was permitted to be done by, Sopkin; that thereafter, on the 26th of April, 1926, Sopkin and his wife conveyed the premises to the Meyers; that Meyer requested changes in the plans and specifica-

tions, and that when they were completed they were accepted by him; that the lowest bid on the building was $45,800; that there became due to complainant $1923.60, of which $500 had been paid; that on the 26th day of January, 1926, the complainant had filed his notice of lien with the registrar of titles of Cook county, and that all the work under the contract was completed by January 11, 1926.

The testimony of plaintiff in error is, that after receiving the contract signed by Hyman Meyer he proceeded to the preparation of plans and specifications in accordance therewith; that they were completed and accepted by Meyer, who signed each page thereof; that when the plans and specifications were first started the building was to be erected on two lots, the total frontage of which is fifty feet; that thereafter, at Meyer's request, the plans were changed to cover three lots, comprising a frontage of seventy-five feet; that after bids were received Meyer said he could not finance the building, and that witness arranged with a contractor who specialized in building and financing and prepared a contract, which the contractor signed, offering to finance and erect the building for the sum of $45,800, and that thereafter Sopkin, who then owned the title to the two lots, met the witness and Meyer in his office and told the witness that they could not proceed with the building as they could not get title to the third lot. He testified that the American Institute of Architects and the Illinois Society of Architects had made a rule that an architect is entitled to seven-tenths of the entire fee for the plans and specifications and taking bids and three-tenths for superintending the construction.

Herald I. Randby testified that he was employed by plaintiff in error and knew the work done in preparing the plans and specifications; that he knew the reasonable, usual and customary charge for the work done, and that he considered $1923.60 a fair and reasonable charge. Plaintiff in error was recalled and further testified that he submitted

the plans, when completed, to Sopkin, then owner of the premises, who approved them, and told him he was interested with Meyer and would see that the witness got his money, and that it was at Sopkin's suggestion that Meyer gave him $500 on account. Randby was recalled and testified that Sopkin told him that he had secured the third lot for Meyer and to go ahead and prepare the plans for the seventy-five-foot frontage and that he (Sopkin) was interested in the deal.

Defendants in error appear to have been represented in court by counsel, but no objections to testimony were offered, no cross-examination of witnesses had, and at the close of plaintiff in error's case counsel announced they had no testimony to offer.

Objections were filed to the master's report, which stood as exceptions before the chancellor. The decree finds the existence of the contract, the ownership, at the time of the contract and the completion of the plans and specifications, in Sopkin, who had full knowledge of the contract and the work done by plaintiff in error, and who thereafter, on April 26, 1926, conveyed the premises to defendants in error. The decree approves the master's report, finds the sum of $1923.60, less a credit of $500, to be due and owing to plaintiff in error, with interest, and finds that he is entitled to a mechanic's lien therefor. On appeal to the Appellate Court the decree was reversed on the ground that the contract was entire in its nature and the compensation provided therein cannot be apportioned to the services called for so as to include those lienable and exclude those not lienable, and that it therefore cannot be ascertained what part of the contract price of six per cent could be made the basis of a lien on behalf of plaintiff in error.

Plaintiff in error argues that the judgment of the Appellate Court is erroneous for the reason that plaintiff in error's failure to fully perform the contract was due entirely to the refusal on the part of the Meyers to perform

their part thereof and their abandonment of the project; that the title to the premises at the time of the making of the contract and the performance of the work was in Sopkin, and that the Meyers did not acquire their interest therein until after the completion of the plans and specifications by plaintiff in error and after the claim of lien had been filed for record.

Section 1 of the Mechanic's Lien act (Smith's Stat. 1929, p. 1812,) provides: "That any person who shall by any contract or contracts, express or implied, or partly expressed or implied, with the owner of a lot or tract of land, or with one whom such owner has authorized or knowingly permitted to contract for the improvement of, or to improve the same, * * * perform services as an architect or as a structural engineer, for any such purpose, * * * shall be known under this act as a contractor, and shall have a lien upon the whole of such lot or tract of land and upon the adjoining or adjacent lot or tract of land of such owner constituting the same premises."

Defendants in error contend that no mechanic's lien can be established unless there was an actual improvement on the land to which the lien is sought to be attached, and that an architect is not entitled to a mechanic's lien for plans and specifications for a building that was not constructed or for an improvement that was not made, and they cite in support of this contention *Mallinger* v. *Shapiro,* 329 Ill. 629. In that case a lien was denied because the architect had failed to secure a loan on the property in accordance with his agreement so to do. Section 1 of the Mechanic's Lien act was not there construed. In *Freeman* v. *Rinaker,* 185 Ill. 172, it was held that the words in section 1, "perform services as an architect for any such purpose," refer to the previous words of section 1, "for the purpose of or in building any house," that being the language of section 1 of the act of 1895, the meaning of which is in no sense changed by the language of the present sec-

tion 1 of the act, "for the improvement of or to improve the same." It was there also said that "the lien is given for services as architect not only in building any house but for the purpose of building any house. When an architect draws plans and specifications for a building, even though he does not superintend its construction, he performs services for the purpose of building it." The language of section 1 as it now stands gives to the architect a lien for services rendered for the purpose of improving property.

While mechanic's lien statutes are in derogation of the common law and should be strictly construed, (*Armstrong* v. *Obucino,* 300 Ill. 140; *Cronin* v. *Tatge,* 281 id. 336;) yet where, as here, the meaning of the language is clear, courts will construe the act in accordance with the clear intent of the legislature. Section 4 of the Mechanic's Lien act provides that when the owner of the land shall fail to pay the contractor moneys justly due him or fail to perform his part of the contract in any other manner, and if after such breach for a period of ten days the owner fails to comply with his contract, the contractor may abandon the work and in such case shall be entitled to enforce his lien for the value of what has been done, and the court before whom the hearing is had shall adjust his claim and allow him a lien accordingly. Section 1 of the act declares an architect to be a contractor. In this case it is not denied that Sopkin and Meyer refused to proceed with the contract, and under section 4 plaintiff in error was entitled to a lien for such an amount as the court, on hearing, should determine.

It is also urged by defendants in error that the proposed building as planned could not be erected on the two lots owned by Sopkin and later by the Meyers, and that therefore such a building could not be considered an improvement on those two lots, and since the title to the third lot was never obtained, plaintiff in error is not entitled to a lien on the two lots. The evidence shows that neither Sopkin nor Meyer had title to the third lot at the time of the

making of the contract with plaintiff in error or at the time of the preparation of the plans and specifications, and that thereafter Sopkiri and Meyer refused to proceed with the contract because they said they were unable to procure the third lot. The evidence also shows that plaintiff in error's first prepared plans and specifications were for a building to cover two lots, which plans were approved by Meyer, and that the changes in the plans so as to construct a building on three lots were made at the request of Meyer. The validity of plaintiff in error's claim for a lien is not affected by the fact that he does not seek to establish it against all of the land to be covered by the improvement.

In *Springer* v. *Kroeschell,* 161 Ill. 358, it was held that a statement filed with the clerk which claimed a lien for labor and materials used in "a brick building" upon "lots 10 and 11" sufficiently complied with the provision of the statute requiring "a correct description of the property," (Laws of 1887, sec. 4, p. 219,) even as against a purchaser, although the building mentioned covered seven and one-sixth feet of an adjoining lot in the same block. In that case there were no other lots 10 and 11 in block 51 than those upon which the building, which covered lots 10 and 11 and the south seven and one-sixth feet of lot 7, stood. Section 1 of the act of 1874, which was in force in February, 1891, when the first petition was filed in that case, provided that the party entitled to a lien should have it upon the land and building, and it was held that it was quite manifest that a statement which claimed a lien upon the building situated on lots 10 and 11 in block 51 was sufficient to notify owners and purchasers that a lien was claimed upon the building which covered those two lots and the seven and one-sixth feet adjoining them, and that such description was not calculated to mislead subsequent purchasers and creditors and was sufficient to enable them to identify the premises intended to be described as the premises which were covered by the brick building referred to.

In *Granquist* v. *Western Tube Co.* 240 Ill. 132, it was held that where a building contract failed to describe the lots on which the building was to be erected and a claim for lien was filed by mistake against lots 1 and 2, but it was discovered after the time for filing claims had expired that the building was not on lot 1 but was partly on lot 2 and partly on lot 3, it was not error to decree a lien against lot 2 alone, and the conclusion was there reached that the omission, through mistake, to include all the land upon which the lien might have been perfected did not defeat the lien as against the lot properly described where the rights of no person other than the owner of the premises and the contractor were involved. In so holding the court said: "Our conclusion is that the court did not err in holding that the lien should be established against lot 2, but we think that this rule should be limited to cases falling strictly within the facts in this record." In the pending case there was no mistake of the facts, and plaintiff in error would not have been entitled, had the building been constructed, to a lien upon the third lot. Plaintiff in error knew, before performing the services, that neither Sopkin nor Meyer had title to the third lot but was informed that they could acquire such title. Rose Meyer was not a party to the contract, and so far as appears from the evidence had no knowledge of it, except such constructive notice as she might have had by reason of the filing of the claim with the registrar of titles.

The lien given by the statute will attach from the date of the contract, and whoever purchases the property after the contract is made purchases subject to the lien under that contract and is bound by it, (*Clark* v. *Moore*, 64 Ill. 273,) but it is a general rule that where the interests of such a purchaser are to be affected a stricter construction of the Lien law will be adhered to than is followed in cases arising between a mechanic or material-man and the original owner. (*Springer* v. *Kroeschell, supra; Nibbe* v.

*Brauhn,* 24 Ill. 268.) In this case the lien filed with the registrar was for preparing plans, specifications and superintending construction of a building to be erected on lots 31 and 32, and plaintiff in error is not entitled to a lien for services rendered other than with reference to an improvement of these two lots. The evidence shows that at least a portion of the services rendered by plaintiff in error for the improvement of lots 31 and 32 is readily separable from the services rendered for the improvement of the third lot, and it is for such services, and for such services alone, that he is entitled to a decree for a lien in this case.

So far as the interest of Rose Meyer is concerned, it will be noted that plaintiff in error's claim for lien was filed with the registrar of titles, conformably to the statute, prior to the deed to the Meyers. She had at least constructive notice, at the time of taking title, of the filing of such claim and took title subject thereto. It matters not, therefore, whether she authorized her husband to negotiate the contract with plaintiff in error. She was required to take notice of the records of the registrar's office and is charged with knowledge of the contents of such records. (*Blake* v. *Blake,* 260 Ill. 70.) The decree, however, provided that "such decree for deficiency shall be a lien on all real estate and other property of Hyman Meyer and Rose Meyer, and each of them." There is no basis in the evidence for the rendition of a decree making Rose Meyer personally liable for any deficiency.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court for the hearing of further evidence as to the amount of the lien which plaintiff in error is entitled to for services rendered for the improvements of lots 31 and 32 so far as they are separable and the entry of a decree for the amount of the lien found due plaintiff in error in accordance with the views herein expressed.

*Reversed and remanded, with directions.*