# Illinois Official Reports

## Supreme Court

---

**Christopher B. Burke Engineering, Ltd. v. Heritage Bank of Central Illinois,**
**2015 IL 118955**

---

| | |
|---|---|
| Caption in Supreme Court: | CHRISTOPHER B. BURKE ENGINEERING, LTD., Appellant, v. HERITAGE BANK OF CENTRAL ILLINOIS *et al.*, Appellees. |
| Docket No. | 118955 |
| Filed | November 19, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Michael E. Brandt, Judge, presiding. |
| Judgment | Judgments reversed. Cause remanded. |
| Counsel on Appeal | Jeffrey E. Krumpe, of Miller, Hall & Triggs, LLC, of Peoria, and Scott R. Fradin and Scott J. Smith, of Much Shelist PC, of Chicago, for appellant. |
| | Michael A. Kraft, of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, for appellee Heritage Bank of Central Illinois. |
| | Kevin R. Sido, Stephen R. Swofford and Adam R. Vaught, of Hinshaw & Culbertson LLP, of Chicago, for *amici curiae* The American Institute of Architects-Illinois Council *et al*. |

Justices                    CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1       Christopher B. Burke Engineering, Ltd. (Burke Engineering) filed a complaint in civil court to foreclose on a mechanics lien on property owned by Carol and Glen Harkins. Heritage Bank of Central Illinois (Heritage Bank) has a mortgage interest in the same property. The circuit court of Peoria County invalidated the lien on grounds that the requirements for a mechanics lien set forth in section 1 of the Mechanics Lien Act were not met. 770 ILCS 60/1 (West 2008). Specifically, the circuit court found that the services provided by Burke Engineering did not constitute an improvement to the property and that the provision of services was not induced or encouraged by the property owner. The appellate court affirmed. 2015 IL App (3d) 140064. We allowed Burke Engineering's petition for leave to appeal, pursuant to Illinois Supreme Court Rule 315 (eff. Jan. 1, 2015).

¶ 2                                    BACKGROUND

¶ 3       Around April 2008, Burke Engineering entered into an agreement with Glen Harkins (Harkins). Pursuant to the agreement, Burke Engineering was to survey a tract of land that Harkins was interested in purchasing and to draft and record a plat of subdivision for the property. At the time the agreement was entered into, the property was owned by Carol Schenck. Glen and Carol Harkins (the Harkinses) bought the property from Schenck after approximately six to twelve months of discussion. They closed on the property in August 2008. Though the exact schedule of the engineering work is unclear, both parties agree that Burke Engineering began some work for Harkins before the closing and continued the work afterward.

¶ 4       In February 2009, after one house was built on a lot on the property and after Burke Engineering had recorded the final plat, conducted a wetlands survey, and provided services for planning roads, utilities, and sewers, Harkins stopped all work on the property. At that time, Burke Engineering had invoiced Harkins $109,549.69, but received no payment. Burke Engineering recorded a mechanics lien on the property and filed suit to foreclose on the lien against the Harkinses; Heritage Bank, which provided the Harkinses with the financing to purchase the property in exchange for a mortgage interest; and the Allisons, the family that purchased the one completed house. Burke Engineering settled with the Allisons and the Harkinses filed for bankruptcy. After discovery, Heritage Bank filed a motion for summary judgment based on allegations that the lien did not meet the requirements of section 1 of the Mechanics Lien Act and was thus invalid. 770 ILCS 60/1 (West 2008).

¶ 5       In her deposition, Carol Schenck—the owner of the property at the time Burke Engineering and Harkins entered into the contract at issue—stated that Harkins had mentioned that he was working with Burke Engineering, but that she had no knowledge regarding the substance of the agreement. She further stated that she had given no one

- 2 -

authority to act on her behalf. Through documents, she attested that the property had been free of any improvements or contracts for improvements for at least six months prior to the sale.

¶ 6    Harkins testified that he had never intended to work with Schenck on developing the property and that he was not authorized to act on Schenck's behalf. However, he testified that Schenck knew he had entered into a contract with an engineer to develop the property and that she had not objected to the contract.

¶ 7    The circuit court found that the services provided by Burke Engineering did not constitute an improvement as defined in section 1 of the Mechanics Lien Act and that the property owner had not induced or encouraged the work. *Id.* Therefore, the circuit court held that the lien was invalid and granted summary judgment in favor of Heritage Bank. The appellate court affirmed.

¶ 8                                                   ANALYSIS

¶ 9    Before this court, Burke Engineering argues that the circuit court erred in granting Heritage Bank's motion for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). This court reviews summary judgment rulings *de novo*. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 18. Whether summary judgment was appropriate in this case turns on the court's interpretation of section 1 of the Mechanics Lien Act. This court also reviews issues of statutory interpretation *de novo*. *LaSalle Bank National Ass'n v. Cypress Creek 1, LP*, 242 Ill. 2d 231, 237 (2011). In relevant part, section 1 of the Mechanics Lien Act provides that:

"(a) Any person who shall by any contract or contracts, express or implied, or partly expressed or implied, with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land or for the purpose of improving the tract of land, or to manage a structure under construction thereon, is known under this Act as a contractor and has a lien upon the whole of such lot or tract of land *** for the amount due to him or her for the material, fixtures, apparatus, machinery, services or labor, and interest at the rate of 10% per annum from the date the same is due. ***

(b) As used in subsection (a) of this Section, 'improve' means to furnish labor, services, material, fixtures, apparatus or machinery, forms or form work in the process of construction where cement, concrete or like material is used for the purpose of or in the building, altering, repairing or ornamenting any house or other building, walk or sidewalk, *** driveway, fence or improvement or appurtenances to the lot or tract of land or connected therewith ***; or fill, sod or excavate such lot or tract of land, or do landscape work thereon or therefor; or raise or lower any house thereon or remove any house thereto, or remove any house or other structure therefrom, or perform any services or incur any expense as an architect, structural engineer, professional engineer, land surveyor or property manager in, for or on a lot or tract of land for any such purpose; or drill any water well thereon; or furnish or perform labor or services as superintendent, time keeper, mechanic, laborer or

otherwise, in the building, altering, repairing or ornamenting of the same; or furnish material, fixtures, apparatus, machinery, labor or services, forms or form work used in the process of construction where concrete, cement or like material is used, or drill any water well on the order of his agent, architect, structural engineer or superintendent having charge of the improvements, building, altering, repairing or ornamenting the same." 770 ILCS 60/1(a), (b) (West 2014).

¶ 10    Whether Heritage Bank was entitled to summary judgment depends on whether the services provided by Burke Engineering constitute an improvement as defined in subsection (b) of the Mechanics Lien Act (Act) and whether Carol Schenck knowingly permitted Harkins to enter into a contract regarding the property while she owned it as set forth in subsection (a). 770 ILCS 60/1(b) (West 2014). "In matters of statutory construction, we endeavor to 'ascertain and give effect to legislative intent.' " *LaSalle Bank National Ass'n*, 242 Ill. 2d at 237 (quoting *People v. Perry*, 224 Ill. 2d 312, 323 (2007)). The plain language of the statute is the best indicator of legislative intent. *Id.* Where the language of the statute is clear and unambiguous, we apply it as written. *Id.* Only when the language is ambiguous do we turn to extrinsic aids to determine legislative intent. *Id.*

¶ 11                    Whether Burke Engineering's Services Constitute an Improvement

¶ 12    The appellate court concluded that Burke Engineering's lien was invalid because there was no physical improvement to the property or calculable increase in the property's value. 2015 IL App (3d) 140064, ¶ 18. As Justice Lytton points out in his dissent, this conclusion ignores the fact that the statute provides a lien if a professional's services result in an improvement *or* if the services are completed for the purpose of improving the property. *Id.* ¶ 43 (Lytton, J., dissenting); 770 ILCS 60/1(a) (West 2014); Pub. Act 94-627 (eff. Jan. 1, 2006) (adding the words "or for the purpose of improving" to section 1 of the Act). Burke Engineering's services—creating a plat of subdivision, surveying the property, planning out roads and sewers—were done to enable Harkins to develop a neighborhood on the property and thus were done for the purpose of improvement. There is no convincing evidence in this case that the engineering services were done for any other purpose. Compare *Mostardi-Platt Associates, Inc. v. Czerniejewski*, 399 Ill. App. 3d 1205, 1210 (2010) (concluding that surveying services done for the purpose of helping the defendant decide whether to exercise an option to purchase property were not done for the purpose of improving property and thus were not lienable).

¶ 13    If a physical improvement is required in order for an engineer to secure a lien for their work, then these professionals would be subject to the whims of the parties with whom they contract, who may decide to complete the project or not. Such an outcome is contrary to the protective purpose of the Act. *Contract Development Corp. v. Beck*, 255 Ill. App. 3d 660, 669 (1994) ("Denying a lien on [the basis that the project was abandoned and the work provided no enhancement to the value of the property] thwarts the purpose of the Act since it benefits the owner who has breached the contract at the expense of the contractor, who has performed substantial services and is entitled to payment."); see *LaSalle Bank National Ass'n*, 242 Ill. 2d at 243 ("The Mechanics Lien Act aims to 'protect those who in good faith furnish material or labor for construction of buildings or public improvements.' " (quoting *Lawn Manor Savings & Loan Ass'n v. Hukvari*, 78 Ill. App. 3d 531, 532 (1979))).

¶ 14    The requirement of some physical improvement or calculable increase in property value is also contrary to long-standing case law. In *Freeman v. Rinaker*, the parties entered a contract under which Rinaker, an architect, was to design plans for a hotel. *Freeman v. Rinaker*, 185 Ill. 172, 175 (1900). However, construction on the hotel never began. *Id.* The court concluded that "[w]hen an architect draws plans and specifications for a building, even though he does not superintend its construction, he performs services for the purpose of building it" and is thus entitled to a lien. *Id.* at 176. Similarly, in *Crowen v. Meyer*, the parties entered into a contract under which Crowen, an architect, was to prepare plans and specifications for a building. *Crowen v. Meyer*, 342 Ill. 46, 47 (1930) (*per curiam*). At the time the parties entered into the contract, the property involved was owned by Charles Sopkin. *Id.* Sopkin had full knowledge of and consented to the contract. *Id.* He later conveyed the property to the defendants. *Id.* However, the defendants never started construction. *Id.* at 48. The court rejected the defendants' argument that "no *** lien can be established unless there was an actual improvement on the land." *Id.* at 51. The court then concluded that "[t]he language of section I *** gives to the architect a lien for services rendered for the purpose of improving property." *Id.* at 52. We find no reason to depart from this rule.

¶ 15    Heritage Bank then argues that architects and engineers may obtain a lien under section 1 only if their services are related to the raising or lowering of a house on the property, the removal of a house thereto, or the removal of a house or structure therefrom. This argument is based on a minor change in the punctuation of the section. Section 1 of the Act was first enacted in 1903. The original statutory section read as follows:

> "That any person who shall by any contract *** with one whom such owner has authorized or knowingly permitted to contract for the improvement of, or to improve the same, furnish materials, fixtures, apparatus or machinery for the purpose of, or in the building, altering, repairing or ornamenting any house or other building, walk or sidewalk, *** driveway, fence or improvement, or appurtenance thereto on such lot or tract of land ***; or fill, sod or excavate such lot or tract of land ***; or raise or lower any house thereon, or remove any house thereto, or perform services as an architect for any such purpose *** shall be known under this act as a contractor ***." 1903 Ill. Laws 230.

¶ 16    The section was amended in 1919 to make mechanics liens available to structural engineers for their performance of services. 1919 Ill. Laws 640. This change was made by adding the term "structural engineer" to the clause addressing the performance of services by an architect. In 1930, this court interpreted the phrase "perform services as an architect or as a structural engineer, for any such purpose" to mean the performance of any services "rendered for the purpose of improving property." (Internal quotation marks omitted.) *Crowen*, 342 Ill. at 51-52. In 1937, the section was amended to allow a lien for work drilling water wells. 1937 Ill. Laws 904. The introductory language in the public act embodying this amendment indicates that this change was made for the purpose of including water well-diggers, and only this change was emphasized in italics. However, the drafters also changed one semicolon to a comma. The semicolon lies between the clause providing liens for raising, lowering, and removing houses or buildings and the clause establishing liens for the performance of services as an architect or structural engineer. This change was not specially referenced or emphasized in the public act. Section 1 has been amended several

- 5 -

more times since 1937, but the relevant language and punctuation have remained the same. 1951 Ill. Laws 1358; Pub. Act 76-749, § 1 (eff. Aug. 15, 1969); Pub. Act 77-439, § 1 (eff. Jan. 1, 1972); Pub. Act 81-1185, § 1 (eff. July 1, 1980); Pub. Act 84-702, § 1 (eff. Sept. 20, 1985); Pub. Act 86-807, § 1 (eff. Jan. 1, 1990); Pub. Act 87-361, § 1 (eff. Jan. 1, 1992); Pub. Act 94-627, § 5 (eff. Jan. 1, 2006); Pub. Act 98-764, § 5 (eff. July 16, 2014).

¶ 17    Heritage Bank argues that, based on the use of the comma, the phrase "for such purposes" in the clause addressing services provided by architects, engineers, land surveyors, and property managers refers back only to the preceding clause, and thus that such professionals can obtain liens for their work only if that work was for the purpose of raising, lowering, or removing a house or building. This court interprets statutes to "ascertain and give effect to legislative intent" and avoids interpreting statutes in a manner that would create absurd results or render part of the statute a nullity. *Nelson v. Artley*, 2015 IL 118058, ¶¶ 25, 27; *LaSalle Bank National Ass'n*, 242 Ill. 2d at 237. Heritage Bank's interpretation is counter to all of these principles. We have found no indication that the legislature intended to restrict the availability of liens for architects and engineers in the 1937 amendment and are not convinced that the statute should be read so narrowly. The appellate court has, in the past, also recognized a broader interpretation of the statute. See *Ohrenstein v. Howell*, 227 Ill. App. 215, 219 (1st Dist. 1922) ("The present lien act allows a lien to any person who shall contract with the owner of a lot 'for the improvement of, or to improve the same' and shall furnish material and labor for any such purpose and expressly includes the services of an architect."); *First Bank of Roscoe v. Rinaldi*, 262 Ill. App. 3d 179, 184 (2d Dist. 1994) ("Under the Act, architects, structural engineers, professional engineers, land surveyors, and property managers who perform any service or incur any expense for any purpose are entitled to a lien."); *Contract Development Corp. v. Beck*, 255 Ill. App. 3d 660, 666 (2d Dist. 1994) (same).

¶ 18    Though there is no evidence of why the legislature changed the original semicolon to a comma, subsequent amendments reveal an overarching intent to expand the availability of mechanics liens. See, *e.g.*, 1951 Ill. Laws 1358 (amending section 1 to include services provided by professional engineers and land surveyors); Pub. Act 84-702, § 1 (eff. Sept. 20, 1985) (amending section 1 to include services by property managers). Furthermore, when property managers were added to the definition of a contractor, the legislature amended the first part of the section from "[a]ny person who shall by any contract *** to improve the lot or tract of land" to "[a]ny person who shall by any contract *** to improve a lot or tract of land *or to manage a structure thereon.*" (Emphasis added.) *Id.*; Pub. Act 81-1185, § 1 (eff. July 1, 1980). This change would not have been necessary if a property manager's right to a lien was limited to providing services for the purpose of raising, lowering, or removing a house, as Heritage Bank suggests.

¶ 19    Additionally, this interpretation is illogical, because the professionals listed in the clause at issue—architects, structural engineers, professional engineers, land surveyors, and property managers—do not all participate in raising, lowering, or removing houses. See 225 ILCS 305/5 (West 2014) (defining the practice of architecture); 225 ILCS 330/5 (West 2014) (defining the practice of land surveying); 225 ILCS 325/4(n) (West 2014) (defining the practice of professional engineering); 225 ILCS 340/5 (West 2014) (defining the practice of structural engineering); *First Bank of Roscoe*, 262 Ill. App. 3d at 186 (defining the practice of property management based on legislative history). Thus, it would be absurd to interpret the

statute as providing these professionals with liens only when their services are used for projects that typically do not employ such professionals. Furthermore, section 1 was amended in 1951 to include professional engineers and land surveyors. 1951 Ill. Laws 1358. As defined by statute, the practice of land surveying includes "providing any *** plat *** which indicates land boundaries and monuments." 225 ILCS 330/5(e)(2) (West 2014). If these services do not entitle a land surveyor to a lien, then adding professional engineers and land surveyors to the statute was a nullity.

¶ 20    At oral argument, Heritage Bank alternatively argued that the phrase "for any such purpose" relates back to any of the specifically listed types of improvements included in subsection (b). Under this interpretation, an architect, engineer, land surveyor, or property manager is entitled to a lien if his or her services are performed for the purpose of: furnishing labor, materials, fixtures, equipment, forms or form work, or apparatus for building, repairing, or ornamenting any house, other building, or appurtenance; filling, sodding, or excavating a lot or tract of land; or raising, lowering, or removing a house or other structure. Heritage Bank then asserts that Burke Engineering's services—the drafting and recording of a final plat—were not done for any of these purposes. Burke Engineering accepts this definition, but argues that a plat of subdivision is done for such purposes. We agree. Large tracts of land that are to be subdivided must be surveyed and a plat of subdivision must be recorded before any building, structure, or other improvement can be built upon that property. See Plat Act (765 ILCS 205/1 *et seq.* (West 2014) (requiring, among other things, that a plat be made setting forth utilities, streets, and public grounds before land can be subdivided)). Thus, the creation of a plat of subdivision can be understood as a service performed for the purpose of building, repairing, or ornamenting structures and appurtenances on the property. In fact, the engineering services in this case led to the construction of one house on the property.

¶ 21                    Whether Schenck Knowingly Permitted Harkins to Contract

¶ 22    Having concluded that Burke Engineering's work was done for the purpose of improving the property, we must now determine whether Carol Schenck knowingly permitted Harkins to enter into a contract regarding the property while she owned it.

¶ 23    Subsection 1(a) of the Act provides that a contractor has a lien if he or she contracts "with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land or for the purpose of improving the tract of land, or to manage a structure under construction thereon." 770 ILCS 60/1(a) (West 2014). All parties agree that Schenck was the owner of the property when the contract was entered into and thus Burke Engineering did not contract with the owner of the property at that time. All parties also agree that Schenck never expressly authorized Harkins to enter into any contracts on her behalf regarding the property. Thus, Burke Engineering's lien is only superior to Heritage Bank's interest in the property if Schenck knowingly permitted Harkins to enter into the contract.

¶ 24    The appellate court has interpreted the phrase "knowingly permitted" to mean that the property owner knew of the contract and failed to object to it or accepted the benefits of the improvements. *Construx of Illinois, Inc. v. Kaiserman*, 345 Ill. App. 3d 847, 857-58 (2003); *Miller v. Reed*, 13 Ill. App. 3d 1074, 1077 (1973); *Fettes, Love & Sieben, Inc. v. Simon*, 46

Ill. App. 2d 232, 236 (1964). This is a logical interpretation. The statute addresses situations in which the owner authorizes a third party to contract on his or her behalf, then addresses whether an owner knowingly permitted a third party to contract regarding the property. This is similar to the concept in agency law of actual and apparent authority of an agent to act on behalf of a principal. See *Rittenhouse & Embree Co. v. Warren Construction Co.*, 264 Ill. 619, 624 (1914) ("The foundation of the right to a mechanic's lien is a valid contract with the owner of the lot or tract of land to be improved, or with his duly authorized agent ***."). " 'Apparent authority *** is the authority which the principal knowingly permits the agent to assume ***. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.' " *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 34 (quoting *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523 (1993)). A principal can ratify, and thereby retroactively authorize an agent's action, by accepting the benefits of that action. *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 14-15 (2004).

¶ 25        Heritage Bank argues that Burke Engineering cannot establish that Schenck knowingly permitted the contract because she did not receive any benefit from the work or induce the work in any way. This is the approach taken by the circuit court. Acceptance of a benefit is only one way, however, to show that a property owner knowingly permitted a party to contract regarding her property. If acceptance of a benefit were the only way to show an owner knowingly permitted someone to contract, contractors would again be needlessly at the mercy of the parties with whom they contract—a contracting party could abandon its project and claim any lien was invalid because the owner had not received a benefit. The amount of work done by the architect or engineer is likely the same up until that point, regardless of whether any physical manifestations of the work are evident. Thus, engineers, and other similarly situated professionals, must be able to demonstrate that a property owner knowingly permitted a third party to contract regarding the owner's property without having to demonstrate that the owner accepted a benefit.

¶ 26        Heritage Bank also argues that Schenck did not knowingly permit the contract because she never knew the details of the contract between Harkins and Burke Engineering and never had an opportunity to object to the agreement. This is a far more compelling argument. We note that the appellate court did not address this issue at all and that the circuit court merely concluded that the owner did not "encourage or induce" the work by Burke Engineering. It is not clear from the record whether Schenck knew that the engineering work commenced before the closing day. Nor is it clear that she knew what Burke Engineering was expected to do under the contract. Furthermore, it is unclear whether she had or would have had any opportunity to object to the contract. As pointed out by Heritage Bank, the provision of some benefit is often (but not exclusively) the event that triggers the property owner to object. In this case, it is unclear whether Schenck could have said anything to Harkins to cancel or postpone the work until after they closed on the real estate transaction or if she ever had the opportunity to object to Burke Engineering using, modifying, or otherwise affecting the property for any purpose in connection with the work. Because these questions of fact remain, the circuit court erred in granting summary judgment for Heritage Bank. Therefore, we remand this case to the circuit court to consider whether Schenck knowingly permitted Harkins to enter into the contract under the standard we have set forth. If the court finds that Schenck knowingly permitted Harkins to enter into the contract regarding her property, then

the lien attached when the contract was formed and is senior to Heritage Bank's mortgage interest. 770 ILCS 60/1(a) (West 2014). If Schenck did not authorize or knowingly permit Harkins to contract, then the requirements of section 1 were not met until Harkins became the owner of the property, and thus no lien could have been created until after Heritage Bank secured its mortgage interest.

¶ 27                                              CONCLUSION

¶ 28        Section 1 of the Act provides a lien for services performed by an architect, engineer, land surveyor, or property manager for the purpose of improving property. 770 ILCS 60/1 (West 2014). The Act does not restrict the availability of liens for these professionals to services performed only for the raising, lowering, or removal of a house. Because Burke Engineering's services were done for the purpose of improving the property, the services are lienable. However, it is unclear whether Carol Schenck, owner of the property at the time the contract for services was entered into, knowingly permitted Harkins to enter into contracts regarding the property. Because the resolution of this issue involves unanswered material questions of fact, Heritage Bank is not entitled to summary judgment. Therefore, we reverse the judgments of the circuit and appellate courts insofar as they held the services did not constitute an improvement, and remand this case to the circuit court to determine whether Schenck knowingly permitted Harkins to contract regarding the property.

¶ 29        Judgments reversed.
¶ 30        Cause remanded.